OPINION
Moses Stevens appeals from his conviction in the Montgomery County Common Pleas Court of two counts of aggravated burglary, three counts of aggravated robbery, one count of felonious assault, and two counts of aggravated menacing. Each count contained a firearm specification.
The facts underlying this appeal are set out in the State's brief and are essentially undisputed.
Dustin Biers, Angel Nelson, Bruce Nelson, and Danny Seiber, were all inside the Nelson home located at 247 Bierce Street in the early evening of October 15, 2000. Around 6:30 that evening an unknown man came into the house, pulled out a gun, and demanded money and drugs. The intruder made his demands to the three persons who were sitting in the living room: Bruce Nelson, and his two teenaged visitors Danny Seiber and Dustin Biers. When the intruder entered the home, Nelson's then ten-year-old daughter, Angel, was in the bathroom. Upon hearing someone open, and then slam shut, the front door, Angel walked into the living room where she saw the robber. After seeing the man inside the home, Angel and her friend then returned to the Nelson home and waited outside for the intruder to leave. When he did so, the girls obtained the license plate number of the vehicle that they saw the robber get into.
Detective William Myers investigated the case for the Dayton Police Department. As part of his investigation, the detective showed a photo array of possible suspects to all four individuals who were in the Nelson home when the crimes occurred. Appellant's picture was placed in the first position of the photo spread. Bruce and Angel Nelson both positively identified the man in photo number one as the perpetrator of these crimes. However, neither Danny Seiber nor Dustin Biers were able to positively identify appellant as the intruder. Seiber believed it could have been either one of the one in photos one and two. Dustin Biers could not choose between photos one and five.
Prior to Steven's arrest, "wanted posters" were hung up in certain apartment buildings where Stevens was known to have stayed. These posters were displayed in an area approximately eleven or twelve blocks away from Nelson's neighborhood, and none of the witnesses stated that they saw the posters either before or after the detective showed them the photo array.
Prior to trial, Stevens moved to suppress the use of any identification testimony in his prosecution. Stevens asserted that the identification of him as the perpetrator of the offenses was made under circumstances which were unnecessarily suggestive and coercive to an irreparable mistaken identification. He further asserted that the identification procedure was of such a nature as to irrevocably taint any future identification of him as the perpetrator of the offenses.
The trial court conducted a hearing on the motion and issued findings of fact and conclusions of law. The court noted that Dustin Bier was asked by Detective Myers if he could identify the suspect from a photo spread containing 6-9 photographs. Bier testified he looked at the photospread for 10-15 minutes and picked out two males. He testified the suspect was in the Nelson home for ten minutes.
The court noted that Angel Nelson, age 10, testified she was home when the suspect entered her house. She testified she saw the suspect point a gun at her father and demand money from him. Angel said she saw the suspect for a couple of minutes and she gave a description of him to the police. Angel said Detective Myers showed her a photo spread with nine pictures in it and asked her "to pick one out, which one she thought it was." Angel testified she looked at the photo spread for about two minutes and then picked out the defendant's photograph. She testified she saw the gunman's face clearly. On cross-examination by the prosecutor, she admitted that Detective Myers read the instructions on the bottom of the photo spread and explained them to her.
Bruce Nelson testified he was home lying on his couch with a broken leg when the robber came in his home. He said the robber was in his home for about ten minutes and he looked at him the whole time except when his daughter Angel entered the front room and left the house. Nelson said he was shown a photo spread of about nine individuals by Detective Myers. He said Myers said to him, "I'm going to show you a sheet here. It might not necessarily be the one. Something to that fact. And just look it over and take your time." (T. 85.) Nelson said he picked photo number one as the robber. (T. 85.)
Danny Sieber, age 16, testified he was present at the robbery at Nelson's house. Sieber said the robber was in the house for 10-15 minutes and he looked at him the whole time. Sieber said Detective Myers came to his grandmother's house and asked if he could pick the robber out from a photospread. He said he picked two photos of people who looked like the robber. (T. 94.) On cross-examination, Sieber said he remembered Detective Myers reading instructions to him which included the admonition that the photographs may or may not contain a picture of the suspect in it. Sieber testified, (Myers) said "I can't tell you who it is, or even if it's here." But can you look at that for me?" (T. 98.)
Detective Myers testified he showed the photospread to the witnesses the day after the robbery. Myers said the photospread contained six photographs of individuals with similar physical features. Myers said he showed the photospread to the witnesses individually and read each a set of instructions including the statement that the group of photographs may or may not contain the picture of the person who committed the crime being investigated. Myers said Bruce Nelson studied the photospread for about a minute and picked the defendant as the robber. (T. 51.) Myers said Nelson said he was sure of his selection of the defendant. (T. 82.) Myers said he showed the photograph to Angel Nelson and she picked out the defendant almost immediately. (T. 50.) Myers denied he told Angel "Would you pick one out." He said he told Angel, "if you see a picture of the guy who did this yesterday, could you pick him out?" (T. 58.) Nelson acknowledged that the detective showed him a sheet that had pictures on it, and that sheet (State's Exhibit 1) contains the admonition that the suspect's picture may not be in the photospread.
The trial court found at the conclusion of the hearing that the identification process used by Detective Myers was not impermissibly suggestive and in any event, suggestiveness does not preclude admissibilty of the pre-trial or trial identification if the identification itself is reliable. The trial court found the identification reliable because each witness had a good view of the defendant for 10-15 minutes, their descriptions of the suspect was accurate, and matched the defendant, the identification of the defendant by two witnesses was positive and immediate, and the identification procedure took place soon after the crime.
Finally, appellant contends that Detective Myers should have determined whether the "Wanted" posters with the defendant's face were seen by the witnesses prior to the witnesses viewing the photospread. The record does not establish, however, that the "wanted" poster was distributed prior to the witnesses seeing the photospread. Indeed it seems likely they were not seen since the witnesses viewed the photospread the day after the crimes were committed.
From the state of this record, we agree with the trial court's determination that police did not use suggestive procedures to influence the identification of the defendant. We also agree the identifications by the two witnesses were reliable as the two witnesses had a significant opportunity to view the defendant and to make an accurate identification. The first assignment of error is overruled.
In his second assignment of error, appellant contends his conviction is against the manifest weight of the evidence. This assignment must be overruled because we are unable to weigh the evidence without the evidence, i.e., the transcript of the trial. This assignment of error is overruled.
In his third assignment of error, appellant contends the trial court erred in not allowing him to fully explore the identification issue during the suppression hearing. He refers us to suppression transcript pages 9, 10, 30, 33 and 36. We have reviewed the record at these locations and see no error in the trial court's ruling. The last assignment is overruled.
The judgment of the trial court is Affirmed.
WOLFF, P.J., and YOUNG, J., concur.